# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**RAYMOND E. JACKSON**

Plaintiff,

v.

**JOHN E. POTTER, POSTMASTER GENERAL,**

Defendant(s).

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, **RAYMOND E. JACKSON**, by and through his attorney, Derek W. Cole, **COLE &**

**ASSOCIATES**, for his Complaint against Defendant(s), states and alleges as follows:

### JURISDICTION AND PARTIES

**1.**     Plaintiff, **RAYMOND E. JACKSON,** is an African-American male citizen of the United

States and the State of Colorado who presently resides at the following address:

> Raymond E. Jackson
> 17107 E. Ithica Circle
> Aurora, CO 80013

**2**.     Defendant, **JOHN E. POTTER, POSTMASTER GENERAL**, is the head of the U.S.

Postal Service (hereafter referred to as "the USPS"), a United States Government agency of the

United States Government.

**3.**     Defendant(s) is(are) an employer(s) within the meaning of Title VII.

**4.**     Plaintiff is a current employee of the Defendant(s).

**5.**     The alleged unlawful employment practices took place at the following locations:

> Boulder Valmont Station
> 2995 55th Street
> Boulder, CO 80301

**6.**     This is an employment discrimination complaint.  Jurisdiction over this action is invoked pursuant to § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 1981 and 28 U.S.C. § 1343.

**7.**     Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(c).

**ADMINISTRATIVE PROCEDURE**

**8.**     Plaintiff filed an EEO Complaint of Discrimination in the Postal Service (PS Form 2565, March 2001) with the Western Area USPS, EEO Compliance & Appeals, P.O. Box 300, Denver, CO 80201-0300, on September 15, 2005, regarding the alleged discriminatory conduct by Defendant(s).

**9.**     Plaintiff's Charge alleged that Defendant(s) discriminated against him during his employment with the Defendant(s) on the basis of "Retaliation" for Plaintiff engaging in prior, "protected" EEO activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.*

**10.**     Plaintiff's counsel received from the United States Postal Service, Western Area Office, a **NOTICE OF FINAL ACTION** on or about June 23, 2006.

**11.**     This action is timely filed.

## FACTUAL ALLEGATIONS

**12.**     Plaintiff incorporates, by reference, the allegations set forth above in Paragraphs **1** through **11**.

**13.**     On or about August 17, 2004, Plaintiff  filed his first EEO Complaint (**4E-800-0300-04**) after a co-worker informed him that, in front of Plaintiff's other co-workers, Ms. Broadway (Station Manager) and Boulder USPS management personnel were on the workroom floor discussing Plaintiff's job duties and Plaintiff's OWCP-approved medical restrictions.   The basis for Plaintiff's August 17, 2004 EEO Complaint was "discrimination" on the basis of "Physical Disability."

**14.**     At the time Ms. Broadway was discussing Plaintiff's job duties and OWCP-approved medical restrictions, there were at least six other limited duty personnel at Boulder Valmont Station, 2995 55th Street, Boulder, CO 80301 whom Boulder USPS management personnel had not changed their duties, hours, or scheduled days off.

**15.**     On or about October 4, 2004, Plaintiff and Boulder USPS management personnel met for a REDRESS mediation session on EEO Pre-Complaint No. 4E-800-0030-04.

**16.**     The October 4, 2004 REDRESS mediation session on EEO Pre-Complaint No. 4E-800-0030-04 resulted in no resolution of Plaintiff's EEO complaints against the USPS.

**17.**     On or about September 8, 2004, at or about 12:16 PM, and during the pendency of EEO Pre-Complaint No. 4E-800-0030-04, Ms. Broadway came to Plaintiff's desk to inform him that his desk would be moved on Sunday, September 12, 2004, Plaintiff's day off.  In order to effect

the move on Sunday, September 12, 2004, Ms. Broadway instructed Plaintiff to "…have your stuff moved by Friday [September 10, 2004]," or words to that effect.

**18.**     On or about September 10, 2004, Plaintiff's desk was moved from the main floor (where Plaintiff was among approximately 50 people, including clerks and supervisors) to an unoccupied supervisor's break-room, where he was all alone with no windows and no other personnel with whom to work with or even speak with.  Ms. Broadway's justification for moving Plaintiff to such an inhospitable work environment was: "I want to be able to see Ray as soon as I walk in the door!," or words to that effect.

**19.**     On or about September 10, 2004, at or about 12:55 PM, after the janitors moved Plaintiff's desk into a back office, Ms. Broadway had them move Plaintiff's desk a second time. When Plaintiff went to Ms. Broadway's office to ask why his desk had been moved twice in one day, she replied "I want to be able to see you as soon as I walk in the door.," or words to that effect.

**20.**     On or about September 13, 2004, at or about 7:49 AM, Ms Broadway informed Plaintiff that as of that date (September 13, 2004) he was to "clock in" under code (558-01).

**21.**     On or about September 17, 2004, at or about 2:15 PM, Ms. Broadway informed Plaintiff that she was changing Plaintiff's supervisor, but did not name one.

**22.**     On or about September 21, 2004, at or about 7:48 AM, Ms. Broadway informed Plaintiff that, from that day on, he was to report to the "Carrier Supervisor."

**23.**     On or about September 21, 2004, at or about 10:30 AM, Plaintiff was called to Ms. Broadway office, along with union representative Pat Selix, and was offered a new job, changing

4

Plaintiff's days off, reporting time and putting Plaintiff on the leave board.  Such a dramatic

change in Plaintiff's work schedule caused "hardship" for Plaintiff, in that his life was severely

disrupted by the extreme, unplanned change in his work schedule.  Additionally, Plaintiff was

told to sign documents presented to him or be placed in a "no-pay" status.

**24.**     After Plaintiff refused to sign the paperwork given to him, the Union Representative Selix

negotiated a plan where Plaintiff would be able to make a decision on Friday, September 24,

2004.  At this time, Plaintiff was told that he was the first of twelve "limited duty" personnel in

Boulder to be changed, and that Plaintiff's jobs were "unproductive" and Ms. Broadway would

have someone else do them.  Ms. Broadway also informed Plaintiff that he had to do carrier work

or she would change Plaintiff's craft to "Clerk Craft."

**25.**     On or about September 21, 2004, the following USPS personnel at the Boulder Valmont

Station were listed as "Limited Duty" Carriers of Boulder:

> Mr. Mike Soltani;
> Ms. Ruth Thornton;
> Mr. Stu Lesnick;
> Ms. Roseanne Morris;
> Mr. Ray Tillman;
> Mr. George Lawson; and
> Ms. Pam Grutard.

**26.**     In addition to the foregoing "Limited Duty" Carriers, there were at least three (3) least

"Limited Duty" Clerks at the Boulder Valmont Station.

**27.**     On or about September 24, 2004, at or about 11:43 AM, and after all union personnel had

left the office, Ms. Broadway came to Plaintiff's desk to ask Plaintiff for his decision regarding

the "new" job offered to him on September 21, 2004.  Plaintiff stated that he wanted a union

representative present before discussing the matter any further.  Ms. Broadway responded by stating: "Be a man and be responsible for yourself!," or words to that effect.  Plaintiff pulled out a notebook and wrote down what Ms. Broadway said and, in turn she responded: " I don't care what you write down Mr. Jackson, and that she would be back from lunch at 2:00 PM for your decision.," or words to that effect.

28.     On or about September 24, 2004, at or about 1:45 PM, Plaintiff and Tom Desantis went to Ms Broadway's office for Plaintiff to sign for the "new" job offer.

29.     On or about November 3, 2004, at or about 7:00 AM, Plaintiff reported to work to find the computer he had been assigned to for years had been moved from Plaintiff's desk to the Reg. Room where he was not allowed to enter.  Plaintiff asked the clerk why the computer in that new location and was informed that Ms. Broadway said if Plaintiff had a problem with the change, he would need to "…come see her.," or words to that effect.

30.     On or about November 4, 2004, Plaintiff's EE0 complaint was joined in a class action suit (Agency No. CC-800-0359-03, EEOC No. 320-A2-8390X).

31.     From November 3, 2004 to January 5, 2005, Plaintiff was made the victim of various and numerous retaliatory acts from Ms. Broadway, as well as other management personnel, at Ms. Broadway's direction.

32.     During this period of time, Plaintiff detected that his co-workers were afraid to be seen talking with Plaintiff for fear also being retaliated against by Ms. Broadway.

33.     On or about January 26, 2005, another "Limited Duty" Carrier, Mike Soltani informed Plaintiff that, after just a few weeks of casing mail, Ms Broadway told him (Mr. Soltani) that he

didn't have to case mail anymore.  Further, Mr. Soltani was going to be allowed to go back doing the job he had been doing before she changed his job.

**34.**     The preferential treatment given to Mr. Soltani left Plaintiff as the only "Limited Duty" Carrier doing carrier work, which Plaintiff was told he had to perform in order to keep his employment.

**35.**     On or about March 3, 2005, Plaintiff wrote a letter to District Manager Ellis A. Burgoyne requesting help with Plaintiff's situation.

**36.**     On or about April 12, 2005, at the EEO REDRESS meeting was held, but nothing was resolved.  At the meeting Ms. Broadway denied all of Plaintiff's allegations, while Plaintiff pointed out that the first sentence in the Limited Duty Guidelines states: "The USPS should minimize any adverse or disruptive impact on the employee in assigning limited duty (ELM 546.141)."

**37.**     On or about April 19, 2005, Plaintiff filed another EEO complaint (4E-800-0130-05) because Mr. Soltani, another "Limited Duty" Carrier informed Plaintiff Ms. Broadway had returned him to his previous job.  Such a move let plaintiff know that Plaintiff was the only limited duty person to have a new job, and have Plaintiff's days off and hours changed though contact with the union.  The preferential treatment of Mr. Soltani made it apparent to Plaintiff that Plaintiff was being discriminated against because of Plaintiff's race (Black), because Plaintiff was the only black limited duty employee and the only employee being harassed.

**38.**     On or about August 15, 2005, the harassment against Plaintiff continued and he and the union representative being summoned to Ms. Broadways office.  Once there, Plaintiff was

offered yet another "new" job, despite the fact that the previous offer he accepted was less than one (1) year old.  After this meeting a co-worker gave Plaintiff a letter showing that Plaintiff had been assigned a Reserve Letter Carrier (RLC) position, a bid position that Plaintiff was not eligible for due to his disability.  Plaintiff also received a PS Form 50, reinstating a uniform allowance that he had not had in 8 years.  No other limited duty personnel had their uniform allowances reinstated.

**39.**     On or about September 9, 2005, Ms. Broadway had Carrier Supervisor Robin Terre change Plaintiff's starting time from 0700 hrs to 0750 hrs.  Plaintiff asserts that the change in his work hours was racially discriminatory and in retaliation for his prior, "protected" EEO activity. Plaintiff believes such to be the case because both Mr. Lesnick and Mr. Gruff (both white employees) limited duty carriers still do not have a job change or different work hours.

**40.**     On or about October 6, 2005, Plaintiff asked Ms Broadway why he was not allowed to hold down Route 105, when he has a letter signed by the Post Master saying he was a Reserve Letter Carrier (RLC).  Plaintiff told her she had changed Plaintiff's reporting time, days off, and Plaintiff's job saying he was now a carrier.  Ms. Broadway also informed Plaintiff that he was also a "Modified Letter Carrier."  Plaintiff told her he was confused because she changes Plaintiff's job title whenever it suits her.

**41.**     On or about November 15, 2005, Plaintiff filed a "formal" EEO complaint for the following reasons:

       a.   On October 6, 2005, Ms Broadway informed Plaintiff that he could not bid a "hold down" for route 105 after the carrier supervisor had informed Plaintiff that Plaintiff

had the route for the week; and

    b.    Then on October 21, 2005,Plaintiff was instructed to call Citi Bank about a Visa card to order uniforms.  Ms Broadway stood over Plaintiff and raised her voice (loudly/rude) while harassing Plaintiff on the work room floor.

**42.**    On or about November 30, 2005, plaintiff was notified that EEO had combined two of Plaintiff's complaints September 23, 2005 (4E-800-0275-05) and November 15, 2005 (**4E-800-0014-06**).

**43.**    On or about December 15, 2005, at a Formal Step A grievance (**# 05-05-VMS**) it was determined that, in the future, Ms. Broadway treat Plaintiff with "dignity" and "respect."

**44.**    On or about April 6, 2006, Plaintiff received a **STEP B DECISION** on the grievance Plaintiff filed on Ms Broadway for assigning him to a Reserve Letter Carrier position (#24) then not allowing him to hold down route #105. The decision was to return Plaintiff to a **Modified City Letter Carrier** job.  To date, Plaintiff has not been assigned to that position, nor has Ms. Broadway done anything to put RLC#24 up for bid.

**45.**    Plaintiff asserts that, due to the long-term, consistent, unyielding, and unlawful  racial Discrimination and retaliation Plaintiff health has suffered, requiring Plaintiff to now take medication, for the rest of his life, for high blood pressure caused by Defendant's management personnel who have violated Plaintiff's federally protected right to work in an environment "free" of racial discrimination and retaliation for Plaintiff having engaged in prior, protected EEO activity.

## CLAIM(S) FOR RELIEF

**46.**  Plaintiff incorporates by reference the allegations set forth above in paragraphs **1**

through **45**.

**47.**   Through the unlawful actions of their management personnel, and as a matter of "agency" and *Respondiat Superior*, Defendant(s) intentionally discriminated against Plaintiff in the terms and conditions of his employment on the basis of race or color, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. § 1981.

**48.**   As a direct and proximate result of Defendant(s)' intentional discrimination against him, Plaintiff has suffered and continues to suffer damages in the form of lost wages and benefits, past and future.

**49.**   As a direct and proximate result of Defendant(s)' intentional discrimination against him, Plaintiff suffers and continues to suffer pecuniary loss, humiliation, emotional pain, inconvenience, mental anguish and loss of enjoyment of life.  Plaintiff claims compensatory damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a and 42 U.S.C. § 1981.

**50.**   Defendant(s)' intentional discrimination against Plaintiff was engaged in with malice or reckless indifference to Plaintiff's federally protected rights.  Plaintiff claims punitive damages under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a and 42 U.S.C. § 1981.

**51.   WHEREFORE**, Plaintiff,  **RAYMOND E. JACKSON**, asks this Honorable Court to enter judgment in his favor and against Defendant(s) for lost past wages and benefits in lieu of reinstatement; compensatory damage for future pecuniary loss, humiliation, emotional pain, inconvenience, mental anguish and loss of enjoyment of life; punitive damages, costs, interest

10

and expert fees; attorney's fees, and such other further equitable and legal relief as may seem

proper to this Honorable Court.

**52.   PLAINTIFF DEMANDS TRIAL OF THIS CASE BY A JURY OF SIX**

Respectfully submitted this 20th day of September 2006.

**COLE & ASSOCIATES**

s/**Derek W. Cole**

Derek W. Cole (CO Atty. Reg. #14761)

**COLE & ASSOCIATES**

1532 Galena Street

Suite # 280

Aurora, CO 80010

Phone: 303-366-6363

Fax: 303-360-3923

E-mail: attydwcole@earthlink.net

Attorney for Plaintiff

<u>Plaintiff's Address</u>:

Raymond E. Jackson

17107 E. Ithica Circle

Aurora, CO 80013

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### **CERTIFICATE OF MAILING/SERVICE (CM/ECF)**

I hereby certify that on _____, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address(es):

attydwcole@earthlink.net

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

United States Postal Service (**via mail**)
EEO Compliance & Appeals
P.O. Box 300
Denver, CO 80201-0300

Western Area Law Department (**via mail**)
United States Postal service
600 17th Street
Dominion Plaza South
Suite # 1705
Denver, CO 80202-3333

**COLE & ASSOCIATES**

s/**Derek W. Cole**
Derek. Cole (CO Atty. Reg. #14761)
**COLE & ASSOCIATES**
1532 Galena Street, Suite # 280
Aurora, CO 80010
Phone: 303-366-6363
Fax: 303-360-3923
E-mail: attydwcole@earthlink.net
Attorney for Plaintiff

12