IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 06-cv-01881-REB-CBS

RAYMOND E. JACKSON,

    Plaintiff,

v.

JOHN E. POTTER, POSTMASTER GENERAL,

    Defendant.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Defendant's Motion for Summary Judgment** [#45], filed March 17, 2008. I grant the motion in part and deny it in part.

## I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party which does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id.* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III. ANALYSIS

Plaintiff is employed by the U.S. Postal Service at the Valmont Station in Boulder, Colorado. Due to medical restrictions, plaintiff works a limited duty modified letter carrier position. In 2004, plaintiff filed an internal EEO complaint against Station Manager Shelby Broadway, complaining that she had discussed confidential information concerning him, including his medical condition, on the workroom floor. Plaintiff claims that following this grievance, Broadway began to harass him by, *inter alia*, moving his desk, unjustly and disparately scrutinizing his work, engaging in hostile confrontations with him, and repeatedly changing his work assignments and hours.

On September 24, 2004, following a medical reevaluation, plaintiff was offered a modified limited duty assignment, which he accepted. The new assignment altered plaintiff's hours and days off. Although plaintiff contacted an EEO counselor

complaining of these changes, he did not file a formal EEO complaint within fifteen days of receiving the Notice of Right To File Individual Complaint, *see* 29 C.F.R. § 161.10105(a)(1), and is not pursuing those claims in this lawsuit (*see* Plf. Resp. Br. at 2 & n.1).

On August 15, 2005, Broadway offered plaintiff a job as a clerk, which he declined. On September 9,[1] plaintiff contacted an EEO Counselor regarding this incident and alleging further that

> I'm facing retaliation on a daily basis from a racist station manager (Ms. Broadway). The retaliation is from a prior EEO (4E-800-130-05) dated April 19, 2005, where I was discriminated against by having my job changed as a black limited duty carrier, while other white limited duty carriers['] jobs remain the same. . . .
>
> There are other ways I am being discriminated against by Ms. Broadway. I have been ordered by October 20th to start wearing a uniform. . . . My start time has changed numerous times[.]

(Def. Motion App., Exh. A-9 at 3.) On November 4, 2005, plaintiff again contacted an EEO counselor, claiming that Broadway denied his bid for a temporary delivery route on the basis of his race and continued to insist that he wear a uniform even though postal regulations did not require him to be in uniform. He stated further that Broadway "continues to put me in a hostile work environment and further display her racist demeanor as she walks the floor looking for a confrontation with me." (*Id.*, Exh. A-10 at 3.) The Postal Service subsequently consolidated these two grievances, and later

---

[1] Both this exhibit and defendant's Exh. A-10, which comprise the two EEO complaints at issue in this case, reflect several different dates. Because the apposite regulation runs the statute of limitations from the date the employee "initiate[s] contact with [an EEO] Counselor," 29 C.F.R. § 1614.105(a)(1), I find the applicable date to be the day on which the Dispute Resolution Specialist signed the form, reflected in section 19b.

issued its notice of final action in June, 2006. This lawsuit followed. Plaintiff asserts three causes of action under Title VII: race discrimination, hostile work environment harassment, and retaliation.

Before analyzing these substantive claims, I must determine whether any of the allegedly adverse actions that plaintiff seeks to bring within the ambit of his discrimination and retaliation claims are untimely. The regulations governing complaints of workplace discrimination by federal employees require the employee to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Supreme Court precedent is clear that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." **National Railroad Passenger Corp. v. Morgan**, 536 U.S. 101, 112, 122 S.Ct. 2061, 2071, 153 L.Ed.2d 106 (2002). Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." **Kaster v. Safeco Insurance Co. of America**, 212 F.Supp.2d 1264, 1269 (D. Kan. 2002) (citing **Morgan**, 122 S.Ct. at 2072), *aff'd*, 2003 WL 22854633 (10th Cir. Dec. 3, 2003).[2]

---

[2] Nevertheless, allegedly discriminatory or retaliatory acts that are untimely still "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." **Morgan**, 122 S.Ct. at 2072 (quoting **United Air Lines, Inc. v. Evans**, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)). In addition, in this circuit, the causation element of a Title VII retaliation claim may be proven, *inter alia*, by showing a pattern of retaliatory conduct that begins shortly after the plaintiff's protected activity and only later culminates in an adverse employment action. **See Piercy v. Maketa**, 480 F.3d 1192, 1199 (10th Cir. 2007); **Day v. Kraft Foods North America, Inc.**, 490 F.Supp.2d 1148, 1157 (D. Kan. 2007). Moreover, evidence of these other actions may be relevant to establish plaintiff's hostile environment claim. **See Morgan**, 122 S.Ct. at 2074 ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period

These precepts dictate that plaintiff cannot base his discrimination and retaliation claims on any actions that occurred more than 45 days before September 9, 2005, that is, July 26, 2005, with respect to the first complaint, or between September 10, 2005, and September 20, 2005, with respect to the November 4 complaint. Thus, plaintiff's complaints regarding his earlier job reassignment are untimely, as are any complaints regarding changes to plaintiff's work location, duties, schedule, or other matters that fall outside the range of the above-mentioned dates.

Conversely, plaintiff's complaints regarding the allegedly adverse employment actions of offering him a job in the clerk craft, requiring him to wear a uniform when he previously had not been required to do so, and denying his bid for a temporary letter carrier route are all clearly timely. Moreover, it appears that plaintiff's schedule changed at least twice within the time frame encompassed by the EEO complaints on which he sues. (*See* First Am. Compl. ¶ 29 at 4 [#38], filed November 9, 2007 (alleging that plaintiff's start time and days off were changed on or about September 9, 2005); Plf. Resp. App., Exh. 1 ¶ 8 at 8 (averring that Broadway changed plaintiff's start time in October, 2005.)) Finally, the alleged campaign of harassment that plaintiff claims Broadway inflicted on him also may constitute an adverse employment action and includes actions that are timely and within the scope of his EEO complaints. ***See Somoza v. University of Denver***, 513 F.3d 1206, 1215 (10th Cir. 2008); ***McGowan v. City of Eufala***, 472 F.3d 736, 743 (10th Cir. 2006).

Defendant maintains that even if plaintiff's complaints regarding these events

---

of the hostile environment may be considered by a court for the purposes of determining liability.").

were timely, they do not constitute "adverse employment actions" sufficient to sustain plaintiff's burden of proof as to his discrimination and retaliation claims. The phrase "adverse employment action" is broadly construed in this circuit, encompassing any action "*materially* adverse to the employee's job status." **Hillig v. Rumsfeld**, 381 F.3d 1028, 1033 (10th Cir. 2004) (quoting **Wells v. Colorado Department of Transportation**, 325 F.3d 1205, 1213 (10th Cir. 2003)) (emphasis in **Hillig**).[3] In the context of a retaliation claim in particular, the test of materiality is whether the challenged acts are likely to deter "a reasonable worker from making or supporting a charge of discrimination." **Burlington Northern and Santa Fe Railway Co. v. White**, 548 U.S. 53, –, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006); **see also McGowan**, 472 F.3d at 742. "Nonetheless, 'a mere inconvenience or an alteration of job responsibilities,' is not an adverse employment action." **Hillig**, 381 F.3d at 1031 (quoting **Berry v. Stevinson Chevrolet**, 74 F.3d 980, 986-87 (10th Cir. 1996)).

Given these standards, I find and conclude that the offer of a position as a clerk was not a materially adverse employment action sufficient to sustain a claim for discrimination or retaliation under Title VII. Plaintiff does not argue, and nothing in the record supports the conclusion that the offer itself was discriminatory or retaliatory.[4] Plaintiff apparently was not required to accept the new job, and, indeed, declined the

---

[3] Defendant's reliance on cases requiring a plaintiff to show proof of a "tangible employment action" that is, one "entailing a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," is misplaced, as that formulation has been expressly rejected in this circuit. **See Hillig**, 381 F.3d at 1031.

[4] Instead, plaintiff's EEO complaint clearly alleges that his *original* job reassignment was discriminatory and that he was retaliated against for filing an EEO complaint regarding that reassignment. (Def. Motion App., Exh. A-9 at 3.)

offer.  Nor did this event dissuade him from filing a charge of discrimination.  ***Somoza***, 513 F.3d at 1214 (noting that "the fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable").  Likewise, I cannot find that the imposition of a uniform requirement was a materially adverse employment action.  ***See McGowan***, 472 F.3d at 743.  Although plaintiff may be correct that applicable regulations did not *require* him to wear a uniform, nothing in the record suggests that wearing one was more than merely inconvenient or annoying to plaintiff.  ***See Burlington Northern***, 126 S.Ct. at 2415 (noting that "[c]ontext matters. . . .  A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children.").  For these reasons, I find and conclude that these matters do not constitute adverse employment actions, and defendant's motion for summary judgment as to those aspects of plaintiff's discrimination and retaliation claims should be granted.

On the other hand, there are genuine issues of material fact as to whether the September and October, 2005, changes to plaintiff's schedule constituted adverse employment actions.  Plaintiff avers that his physical disability makes driving more difficult,[5] and that he therefore requires an early start time to avoid heavy traffic during his commute from his home in Aurora, Colorado, to the Valmont Station in Boulder.  These facts provide the type of relevant context that can transform facially neutral employment decisions into adverse employment actions as to a particular employee.

---

[5] Plaintiff testified that he had three auto accidents after his start time was changed from 6:30 a.m., to 8:00 a.m.  (Def. Motion App., Exh. 1 at 59.)

***See id.*** However, plaintiff presents no evidence to undermine defendant's legitimate, non-discriminatory explanation that his hours were changed to coincide with those of the other letter carrier craft employees.[6] There is, therefore, no genuine issue of material fact to submit to a jury regarding this aspect of plaintiff's discrimination and retaliation claims.

The same cannot be said of defendant's refusing to allow plaintiff to cover another letter carrier's route during that employee's vacation. Plaintiff testified that he would have been entitled to additional compensation if he had been given the route, which is some evidence of materiality. Moreover, although defendant asserts a legitimate, non-discriminatory reason – that plaintiff could not deliver mail due to his physical disability – there is some evidence suggesting that the job could have been split between plaintiff and another employee. (***See*** Def. Motion App., Exh. A-1 at 61 (wherein plaintiff testified that other reserve letter carriers or part-time employees had been used in the past to deliver mail and that he was capable of "casing" the mail for the vacationing employee). I, therefore, find and conclude that genuine issues of material fact preclude summary judgment for defendant as to this aspect of plaintiff's discrimination and retaliation claims.

Likewise, there clearly are fact issues as to whether the alleged campaign of hostility and harassment that Broadway inflicted on plaintiff was sufficiently severe and

---

[6] Plaintiff attempts to create a fact issue based on the deposition testimony of a former supervisor that Broadway "changed [plaintiff's] starting time and changed his days off, which I don't think she had done to anybody else." (Plf. Resp. App., Exh. 2 at 7.) This effort is unavailing. Although it is true that plaintiff was the only letter carrier whose hours were altered, this does not suggest that defendant's stated legitimate non-discriminatory reason – that plaintiff's hours were changed to bring his schedule in line with those of the other employees in his craft – is pretextual.

pervasive to constitute an adverse employment action for purposes of plaintiff's discrimination and retaliation claims. Defendant offers no reason, much less a legitimate, non-discriminatory reason, to justify these alleged actions.

Finally, having reviewed the parties' arguments, the relevant case law, and the summary judgment evidence, I find and conclude that there are genuine issues of material fact that preclude summary judgment as to plaintiff's hostile work environment harassment claim. That plaintiff personally never heard Broadway make any racist or racially derogatory remarks is not dispositive, as defendant implies. The ultimate test is whether Broadway's behavior toward plaintiff was based on his race. This determination is to be made based on the totality of the circumstances, including non-verbal conduct and conduct that is not overtly racist. **See McCowan v. All Star Maintenance, Inc.**, 273 F.3d 917, 925 (10th Cir. 2001); **Watson v. City of Topeka**, 241 F.Supp.2d 1223, 1232-33 (D. Kan. 2002). Plaintiff was apparently the only black limited duty modified letter carrier at the Valmont Station. Broadway allegedly singled him out for abuse and imposed burdens on him that were not inflicted on non-minority employees similarly situated to him. **See McGriff v. American Airlines, Inc.**, 431 F.Supp.2d 1145, 1153 (N.D. Okla. 2006). Contrary to defendant's argument, Broadway's actions toward plaintiff are not isolated, "discrete" acts, but arguably make out the type of ongoing, severe, and pervasive pattern of abusive conduct that may support a hostile work environment claim. Coupled with the arguably racially tinged comments attributed to Broadway, the evidence

clearly admits of triable issues of fact as to plaintiff's hostile work environment claim.[7]

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment** [#45], filed March 17, 2008, is **GRANTED IN PART** and **DENIED IN PART**;

2. That the motion is **GRANTED** with respect to those aspects of plaintiff's Title VII discrimination and retaliation claims set forth in detail in this opinion; and

3. That in all other respects, the motion is **DENIED**.

Dated May 1, 2008, at Denver, Colorado.

                                        **BY THE COURT:**

                                        <u>s/ Robert E. Blackburn</u>
                                        **Robert E. Blackburn**
                                        **United States District Judge**

---

[7] Defendant does not raise any argument regarding whether liability for Broadway's harassment can be imputed to the Postal Service as her employer, and I therefore do not address that issue. **See Wright-Simmons v. City of Oklahoma City**, 155 F.3d 1264, 1269 (10th Cir. 1998); **McGriff**, 431 F.Supp.2d at 1154.